1

2

3

4

5

6

7                        UNITED STATES DISTRICT COURT

8                       NORTHERN DISTRICT OF CALIFORNIA

9

10    RICKY GONZALES,                         No. C 10-1317 SI (pr)

11              Plaintiff,                     **ORDER OF DISMISSAL**

12         v.

13    CALIFORNIA DEPARTMENT OF
      CORRECTIONS; et al.,
14
                Defendants.
15    _____/

16

17                                **INTRODUCTION**

18         Ricky Gonzales, currently incarcerated at Pelican Bay State Prison, filed this pro se civil

19    rights action under 42 U.S.C. § 1983, complaining about his placement in administrative

20    segregation as a gang associate.  The complaint and attachments thereto had information that

21    suggested Gonzales already had litigated some or all of the claims in his complaint.  The court

22    ordered Gonzales to show cause why this action should not be dismissed as barred by the

23    doctrines of res judicata and collateral estoppel.  Gonzales filed a response to the order to show

24    cause and a document entitled "judicial notice" in which he included further argument in

25    response to the order to show cause.  Later, he also filed a "conditional request to amend

26    complaint so as to add additional claims" and a "request for temporary restraining order and/or

27    appointment of counsel."

28

United States District Court

For the Northern District of California

**BACKGROUND**

A.    State Court Habeas Petitions

This action is Gonzales' fourth court challenge to his gang validation and SHU placement. Before he filed this § 1983 civil rights action, Gonzales filed petitions for writ of habeas corpus in the Del Norte County Superior Court, the California Court of Appeal, and the California Supreme Court.  Only the first state petition was litigated extensively, so only that one is described in depth.

Gonzales filed a petition for writ of habeas corpus in the Del Norte County Superior Court on June 3, 2008, In re Ricky Gonzales, Del Norte County Superior Court (hereinafter, the "Del Norte court") No. HCPB08-5084.  Response To OSC (Docket # 8), Ex. 1 (Docket # 8-1). In that petition, Gonzales described the sequence of events that resulted in him being validated as an affiliate of the Northern Structure prison gang.  Docket # 8-1 at 4-6.[1]  He also described the evidence relied upon to validate him, contended he was falsely accused of being a Northern Structure associate, criticized the investigation by the institutional gang investigations unit ("IGI") as being "based on corruption, fabrication, deceitful and flat out false facts," id. at 6, argued why each of the several items should not have been used to validate him, see id. at 8-18, and argued that the IGI had not proven that there were three independent and reliable source items to validate him, see id. at 21.  He also argued that the validation violated his rights under Madrid v. Gomez, 889 F. Supp. 1146 (N.D. Cal. 1995), see Docket # 8-1 at 14, 18, which required three source items for a gang validation, id. at 21, and argued that the validation violated his First Amendment rights.[2]

---

[1]Because some documents have page numbers that are not always consecutive and easily understood, the court uses the page numbers that are automatically put on a document when it is e-filed. For example, page 4 of docket # 8-1 corresponds to the page in Exhibit 1 that starts with paragraph 3 and is marked as page 8 on the bottom center, and page 2 of 23 at the top right corner by Gonzales.

[2]Gonzales inexplicably failed to file with this court a complete copy of his state habeas petition. The copy he did submit consists of a habeas form cover page followed by pages 7-29, but omits pages 2-6.  See Response To OSC, Ex. 1 (Docket # 8-1).  The state court's orders show that the state court understood Gonzales to be asserting, among other things, a federal due process challenge to the gang validation decision, and Gonzales does not argue otherwise.  See Response To OSC, p. 2 (the petition in the Del Norte court "challenges, precisely, the validity of each independent source item used in my validation").

United States District Court
For the Northern District of California

1    The Del Norte court issued an "order to show cause re writ of habeas corpus" on October

2    8, 2008.  Docket # 8-1 at 27-28.  The Del Norte court noted that it had already received an

3    informal response and reply but found it necessary to require a formal response by respondent.

4    That court identified several areas of concern it had about the evidence used to validate Gonzales

5    and directed respondent to address those.   See Docket # 8-1 at 27-28.

6    The respondent (i.e., the warden) filed a "return to order to show cause; memorandum of

7    points and authorities." Docket # 1-3 at 33-38.  In the return, the respondent noted that Gonzales

8    was challenging the gang validation decision, argued that the evidence was sufficient to support

9    the gang validation decision, and urged the court to deny the petition.  The respondent also filed

10   a declaration from correctional lieutenant Joseph Beeson, who worked in the Institutional Gang

11   Investigations (IGI) Unit at Pelican Bay.  Lieutenant Beeson described the evidence used to

12   validate Gonzales as an active Northern Structure gang associate.  See Docket # 1-3 at 18-20.

13   The Del Norte court then issued a "request for additional information."  Docket # 8-1 at

14   30-32.  The court explained that the validation process and placement in SHU was a form of

15   administrative segregation, and the "process has been examined at length by the federal courts

16   and found to pass constitutional muster."  Id. at 30 (citing Toussaint v. McCarthy, 801 F.2d 1080

17   (9th Cir. 1985) and Madrid, 889 F. Supp. at 1240-41).  The court explained that some evidence

18   must support the SHU placement to satisfy due process.   The court then explained that it had

19   conducted an in camera review of the source documents, including several documents submitted

20   under seal, and found several of them sufficient for  validation purposes.  The court did,

21   however, require respondent to produce a document showing the date on which inmate Jeremy

22   Louder had been validated in light of Gonzales' challenge to a statement made in lieutenant

23   Beeson's declaration.[3]   Id. at 32.

24   The Del Norte court received the requested document, reviewed it and found it

25   satisfactorily showed that Gonzales was wrong in his assertion about Jeremy Louden's validation

26   

27   [3]The significance of the date on which Jeremy Louden was validated was that Gonzales'
     validation rested in part on his association with Louden.  If Louden had not been validated as
28   of a particular date, Gonzales' association with him wouldn't have been used to validate
     Gonzales.

United States District Court
For the Northern District of California

1    date.  The court then denied the petition for writ of habeas corpus on July 16, 2009.  See Docket

2    # 8-1 at 34.

3          After failing in the Del Norte court, Gonzales filed the same petition in the state's higher

4    courts.   The petition he filed in November 2009 in the California Court of Appeal was

5    summarily denied by that court on November 23, 2009.  The petition he filed in January 2010

6    in the California Supreme Court was summarily denied on February 18, 2010.

8    B.    The Federal § 1983 Complaint

9          In his § 1983 complaint, Gonzales complains about the decisions to place him in

10   administrative segregation as an affiliate of the Northern Structure ("NS") prison gang.  His 61-

11   page complaint contains some factual allegations, but also is laden with legal argument and

12   peripheral discussions about gang validation procedures.   He asserts numerous legal theories

13   of relief – e.g., retaliation, interference with numerous First Amendment rights, violation of

14   equal protection rights, Eighth Amendment claims, and numerous state law claims – but (with

15   one exception discussed in the footnote) all his claims are based on the gang validation decision-

16   making process in 2007 and resulting ad-seg placement.[4]

18                                **DISCUSSION**

19   A.    Res Judicata Bars The Complaint

20         The related doctrines of res judicata and collateral estoppel limit litigants' ability to

21   relitigate matters.  Under the doctrine of res judicata (also known as the claim preclusion

23         [4]In one cause of action, he alleges that debriefing amounts to cruel and unusual punishment
     because it forces him to become an informant. Docket # 1-2 at 43. "Debriefing" requires the inmates
24   to admit they are gang affiliates, identify other gang affiliates, and reveal everything they know
     about the gang's activities and organizational structure.  Madrid, 889 F. Supp. at 1241.   The
25   court need not determine whether, in some circumstances, the debriefing requirement would
     violate an inmate's Eighth Amendment rights because Gonzales has consistently denied any
26   involvement in the gang.  Assuming his denial of involvement in the gang is truthful, his
     problem is one of impossibility, not that debriefing might endanger him; i.e., Gonzales cannot
27   debrief even if he wants to.  Having alleged no facts which would suggest that could debrief,
     Gonzales lacks standing to challenge the debriefing policy on Eighth Amendment grounds.
28   See Powers v. Ohio, 499 U.S. 400, 410 (1991) (ordinarily a plaintiff does not have standing to
     complain about the deprivations of the constitutional rights of others).

United States District Court
For the Northern District of California

doctrine), "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action. . . . Under collateral estoppel [also known as the issue preclusion doctrine], once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." Allen v. McCurry, 449 U.S. 90, 94 (1980). Res judicata bars not only every claim that was raised in state court but also bars the assertion of every legal theory or ground for recovery that might have been raised in support of the granting of the desired relief. A plaintiff cannot avoid the bar of claim preclusion merely by alleging conduct by the defendant not alleged in the prior action, or by pleading a new legal theory. See McClain v. Apodaca, 793 F.2d 1031, 1034 (9th Cir. 1986); see, e.g., Stewart v. U.S. Bancorp, 297 F.3d 953, 957-58 (9th Cir. 2002) (ERISA claim was barred where plaintiff's prior action had been dismissed because his state law claim was preempted by ERISA and he had failed to amend the prior complaint to state a valid ERISA claim); Smith v. City of Chicago, 820 F.2d 916, 920 (7th Cir. 1987) (claim preclusion applied where single core of operative facts formed basis of both lawsuits and plaintiff neglected to raise § 1983 claim until years after it occurred and not until adverse judgment was rendered on cause of action for employment discrimination); Fleming v. Travenol Laboratories, Inc., 707 F.2d 829, 834 (5th Cir. 1983) (claim preclusion applied where factual basis for Title VII claim was same as factual basis for § 1983 claim raised earlier; even though legal theory was different, same wrong was sought to be vindicated in each instance and plaintiff could have amended prior action to include Title VII claim).

The Federal Full Faith and Credit Statute, 28 U.S.C. § 1738, requires that a federal court give to a state court judgment the same preclusive effect as would be given that judgment under the law of the state in which the judgment was rendered. See Migra v. Warren City School Dist. Bd. of Educ., 465 U.S. 75, 81 (1984). In California, a final judgment in state court "'precludes further proceedings if they are based on the same cause of action.'" Brodheim v. Cry, 584 F.3d 1262, 1268 (9th Cir. 2009) (quoting Maldonado v. Harris, 370 F.3d 945, 951 (9th Cir. 2004)). Under California's "primary rights theory," a "cause of action is (1) a primary right possessed

by the plaintiff, (2) a corresponding primary duty devolving upon the defendant, and (3) a harm done by the defendant which consists in a breach of such primary right and duty.'"  Brodheim, 584 F.3d at 1268 (citation omitted).  If this cause of action test is satisfied, then the same primary right is at stake, even if in the later suit the plaintiff pleads different theories of recovery, seeks different forms of relief, and/or adds new facts supporting recovery.  Id.  "[B]ecause of the nature of a state habeas proceeding, a decision actually rendered should preclude an identical issue from being relitigated in a subsequent § 1983 action if the state habeas court afforded a full and fair opportunity for the issue to be heard and determined under federal standards."  Silverton v. Dept. of the Treasury, 644 F.2d 1341, 1347 (9th Cir. 1981).

Gonzales pursued the same cause of action in state court as here.  The primary right possessed by him was his protected liberty interest in remaining free from SHU placement, the corresponding duty for prison officials was not to place him in the SHU without affording him established procedural protections, and the alleged harm was his gang validation and indeterminate SHU term based on allegedly insufficient/unreliable evidence.  The same procedural protection was complained of in both state and federal actions: use of allegedly insufficient/unreliable evidence.  The same injury was alleged in both: wrongful placement in the SHU as a gang associate.  The actions involve the same injury to the plaintiff and the same wrong by the same prison officials, even though the form of the action in state court (i.e., a habeas petition) led plaintiff to identify as the adverse party his custodian rather than the individual wrongdoers.

The doctrine of res judicata does not apply "when the party against whom the earlier decision is asserted did not have a 'full and fair opportunity' to litigate the claim or issue. . . . 'Redetermination of issues is warranted if there is reason to doubt the quality, extensiveness, or fairness of procedures followed in prior litigation.'"  Kremer v. Chemical Constr. Corp., 456 U.S. 461, 480-81 & n.22 (1982) (citations omitted).  In enacting § 1738 (i.e., the Federal Full Faith and Credit Statute), Congress intended that federal courts give preclusive effect to state court judgments whenever the courts of the State from which the judgment came would do so – accepting the rules chosen by the State from which the judgment came rather than employing

United States District Court
For the Northern District of California

their own rules of res judicata.  "The State must, however, satisfy the applicable requirements of the Due Process Clause.  A State may not grant preclusive effect in its own courts to a constitutionally infirm judgment, and other state and federal courts are not required to accord full faith and credit to such a judgment."  Kremer, 456 U.S. at 482 (footnote omitted).  Where the federal court is considering the preclusive effect of a state court judgment under § 1738, "state proceedings need do no more than satisfy the minimum procedural requirements of the Fourteenth Amendment's Due Process Clause in order to qualify for the full faith and credit guaranteed by federal law."  Kremer, 456 U.S. at 481.

Gonzales had an opportunity for full and fair litigation of his claims that his right to due process was violated by the use of allegedly insufficient evidence to support the gang validation decision that resulted in his SHU placement.  After he filed the petition in the Del Norte court, an informal response and reply were filed.  The court then found it appropriate to require a formal response, so it issued an order to show cause why the petition should not be granted and appointed counsel to represent Gonzales.  The matter was briefed and evidence was submitted. Gonzales had an opportunity to, and did, contest the sufficiency of the evidence.  The Del Norte court reviewed the evidence (some of which was confidential and could not be disclosed to the inmate), identified the correct evidentiary standard for a federal due process claim, and found some of the evidence to be sufficient: "[a]fter the in camera review, the Court determines that the letter possessed by the inmate in his cell and the huelga eagle symbols meet the criteria as reliable source for gang validation, when this Court applies the 'some evidence' standard of review."  Docket # 8-1 at 31.  Nonetheless, the court noted a dispute over the date on which another inmate had been validated as a gang affiliate, and requested additional information about the date of that inmate's validation.  After receiving and reviewing that additional document, the Del Norte court finally denied Gonzales' petition.

Gonzales' cause of action for a due process violation based on the allegedly insufficient and unreliable evidence used to validate him already has been litigated fully.  (Indeed, it appears that the approach taken in the Del Norte court closely parallels the approach taken in federal district courts reviewing gang validation decisions, including in camera review of confidential

United States District Court
For the Northern District of California

documents.)  The fact that the earlier litigation was a state habeas proceeding does not exempt the case from the principles of res judicata.  See Silverton, 644 F.2d at 1347.  Rather, the focus is whether Gonzales had a full and fair opportunity for the issue to be heard and litigated under federal standards, see id.  He did.  Gonzales cited federal cases in his state petition.  The Del Norte court cited federal cases regarding due process requirements for placement in administrative segregation for gang affiliation and determined that the evidence met those standards.

The main difference between the state habeas proceeding and the present civil rights action is that damages are available in the civil rights action.  However, the unavailability of damages in the state habeas proceeding does not exempt that case from the reach of res judicata.  See City of Los Angeles v. Superior Court, 85 Cal. App. 3d 143, 151 (Cal. Ct. App. 1978) (litigant "cannot avoid impact of rule against splitting causes of action by choosing for his first foray a tribunal of limited jurisdiction.")  "[A]ll claims based on the same cause of action must be decided in a single suit; if not brought initially, they may not be raised at a later date.  '"Res judicata precludes piecemeal litigation by splitting a single cause of action or relitigation of the same cause of action on a different legal theory or for different relief."'  . . . A predictable doctrine of res judicata benefits both the parties and the courts because it 'seeks to curtail multiple litigation causing vexation and expense to the *parties* and wasted effort and expense in *judicial administration*.'" Mycogen Corp. v. Monsanto Co., 28 Cal. 4th 888, 897 (Cal. 2002) (citations omitted, emphasis in source).  In Mycogen, the court held that the plaintiff who prevailed in an action for declaratory relief and specific performance of a contract could not pursue damages in a subsequent action for breach of that same contract.  Res judicata barred the second action for damages.  See id. at 904; accord Hatch v. Bank of America N.T. & S.A., 182 Cal. App. 2d 206, 210-11 (Cal. Ct. App. 1960) (prevailing plaintiff in quiet title action who received judgment determining his claim was superior and that he was entitled to immediate judgment was barred by res judicata from pursuing second action for damages sustained during time he was deprived of use of property).  Under California law, Gonzales could not pursue an action for damages in California even if he had received a favorable adjudication in the habeas

1   action.

2       Res judicata bars Gonzales from relitigating the procedural due process claims because

3   the same cause of action is being pursued, Gonzales is the same party as in the earlier case, and

4   the adjudication of the petition was final and on the merits.  Further, res judicata bars not only

5   the due process claim that was litigated, but all the claims that could have been litigated.

6   Gonzales' § 1983 action has new legal theories and claims, but all stem from the same "cause

7   of action" as California law refers to it.  For example, Gonzales claims that the validation

8   decision was done in retaliation for an earlier medical care dispute he had; he claims that his

9   First Amendment rights of free association, free speech and free press were violated by the

10  evidence used to validate him; and he claims that the validation violated his right to equal

11  protection.[5]  All of these claims could have been litigated in the state habeas action and therefore

12  are barred by res judicata.

13      Gonzales makes several arguments as to why he can pursue his claims in a § 1983 action

14  after having asserted them in a state habeas action.   First and foremost, Gonzales argues that,

15  in other actions, the federal district court and respondent's counsel have "made it clear that

16  habeas relief does not extend" to a gang validation claim.  Response To OSC, p. 2.  Assuming

17  arguendo that habeas is not available, it does not lead to a conclusion that § 1983 must be

18  available.  Gonzales' problem is not that he chose § 1983 rather than habeas, but instead is that

19  he litigated and lost in state court before trying to re-litigate in federal court in a § 1983 action.

20      Gonzales argues next that the only claim that a state habeas court can consider is

21  sufficiency of the evidence.  Id. at 4.  He is wrong on the law; the California Supreme Court has

22  given the state habeas petition a much more expansive reach than Gonzales thinks.  A person

23

24      [5]The retaliation claim alleged that prison officials decided to validate him as a gang associate
    for his refusal to decline a medical test.  See Complaint, docket # 1-2 at 14-15, 21.  Even if the
25  additional allegations in the retaliation claim that described the conduct that allegedly prompted the
    retaliatory validation meant that the claim was not barred by res judicata, the retaliation claim would
26  nonetheless be barred by collateral estoppel because the Del Norte court necessarily decided that there
    was sufficient reliable evidence to support the validation decision.  A prisoner cannot show that a prison
27  committee's decision to segregate or discipline him was retaliatory if there was "some evidence" to
    support the committee's decision.  Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir. 1994) (summary
28  judgment for defendants proper on claim of retaliatory reclassification when reclassification was
    supported by "some evidence" and served legitimate penological purpose).

United States District Court
For the Northern District of California

"unlawfully imprisoned or restrained of his liberty" may to prosecute a writ of habeas corpus "to inquire into the cause of such imprisonment or restraint" under California Penal Code § 1473(a). The California Supreme Court explained that "'a person may be said to be unlawfully 'restrained of his liberty,' so as to be entitled to the writ of *habeas corpus*, when, though [lawfully] in custody, he is deprived of some right to which, even in his confinement, he is lawfully entitled under the constitution or laws of this state or the United States, the deprivation whereof serves to make his imprisonment more onerous than the law allows, or curtails, to a greater extent than the law permits even in his confinement, his freedom to go when and where he likes.'" In re. Jesse L. Ferguson, 55 Cal. 2d 663, 669 (1961)  (citation omitted; italics in source).  "It thus appears that a writ of habeas corpus may be sought to inquire into alleged illegal restraints upon a prisoner's activities which are not related to the validity of the judgment or judgments of incarceration, but which relate 'solely to a matter of prison administration.'" Id.  Gonzales does not persuade with his argument that there are limits on state habeas that require that he be allowed to pursue a § 1983 action in addition to the state habeas action.  The remedies available in a state habeas action may not be as expansive as in a § 1983 action, but the remedy does not affect the scope of the rights that can be enforced in such an action.

Finally, Gonzales argues that he should be permitted to proceed because the court virtually invited him to file a § 1983 action when it dismissed an earlier action.  This argument is wholly unpersuasive because it distorts the facts.  The action to which he refers is Gonzales v. Reilly, No. 07-5346 SI.  The complaint in that action alleged a medical care claim and the court dismissed the complaint with leave to amend that claim.  Gonzales then filed a second amended complaint that concerned problems different and distinct from the medical care claim. The court dismissed the second amended complaint because (1) Gonzales had not amended the Eighth Amendment medical care claim to cure the deficiencies in that claim, and (2) his claims about gang validation and ad-seg placement were not properly joined with the medical care claim.  Although Gonzales is correct that the court did dismiss the gang validation and ad-seg placement claims without prejudice, he fails to note that the court in no way suggested that the doctrine of res judicata did not apply.  The court simply had no reason to consider whether res

United States District Court
For the Northern District of California

1  judicata applied to the misjoined claims.

2

3  B.    Miscellaneous Motions

4        Gonzales filed a "request for temporary restraining order and/or appointment of counsel."

5  He argued that he needs a temporary restraining order ("TRO") to compel prison officials to

6  grant him access to the law library so that he can litigate effectively.  He further argues that, if

7  the court won't issue a TRO, counsel should be appointed for him to litigate this matter.

8        "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed

9  on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that

10  the balance of equities tips in his favor, and that an injunction is in the public interest."  Winter

11  v. Natural Resources Defense Council, Inc., 555 U.S. 7, —, 129 S. Ct. 365, 374 (2008).  Under

12  the sliding scale approach that is still available in the Ninth Circuit in addition to the Winter test,

13  "the elements of the preliminary injunction test are balanced, so that a stronger showing of one

14  element may offset a weaker showing of another."  Alliance for Wild Rockies v. Cottrell, No.

15  09-35756, slip op. 1517, 1527 (9th Cir. Jan. 25, 2011); see id. at 1528 (even after Winter,

16  "serious questions going to the merits and a hardship balance that tips sharply toward the

17  plaintiff can support issuance of an injunction, assuming the other two elements of the Winter

18  test are also met" (citations and internal quotation marks omitted)).  Where the court concludes

19  the movant has failed to show a likelihood of success on the merits, the court has discretion to

20  not consider whether the movant would suffer irreparable injury.  Guzman v. Shewry, 552 F.3d

21  941, 948 (9th Cir. 2009).

22        The court has concluded that the action is barred by res judicata.  The TRO will be denied

23  because there is no chance of success on the merits.  See id.   The request for appointment of

24  counsel also will be denied because there is no chance of success on the merits.  See Wilborn

25  v. Escalderon, 789 F.2d 1328, 1331 (9th Cir. 1986) (likelihood of success on the merits

26  considered in deciding whether to appoint counsel).  For these reasons, the request for a TRO

27  and/or appointment of counsel is DENIED.  (Docket # 10.)

28        Gonzales also filed a "conditional request to amend complaint so as to add additional

United States District Court
For the Northern District of California

claims."   The claim he wants to add is one to "allow this court to revisit precisely a claim that was litigated 16 years ago (see Madrid v. Gomez, 889 F. Supp. 1146 (N. D. Cal. 1995)," about the constitutionality of the conditions of confinement in Pelican Bay's SHU.   Conditional Request, p. 2.   The request was conditioned on the action not being dismissed due to the res judicata problem.   See Conditional Request, p. 1 ("if my complaint is unable to survive the court's order to show cause, then all else turns moot").   Now that the action is being dismissed because of the res judicata problem, the condition precedent to the request has not been met. Therefore the conditional request to amend is DENIED.  (Docket # 11.)  Even if the request was not conditional, a claim about the overall conditions of the SHU could not proceed.   As an inmate in the SHU, Gonzales is a member of plaintiff class in the Madrid class action litigation concerning the SHU conditions.   Judge Henderson in that case has ruled that the overall conditions of the SHU do not violate the Eighth Amendment for the non-mentally ill inmates therein.  See Madrid, 889 F.Supp. at 1227-30, 1260-65.  Class members may not relitigate the claim individually.

## CONCLUSION

For the foregoing reasons, the complaint is dismissed with prejudice.  The clerk shall close the file.

IT IS SO ORDERED.

Dated: March 21, 2011

SUSAN ILLSTON
United States District Judge